UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MELISSA STANDIFER,<br><br>Plaintiff,<br><br>v.<br><br>JACOB LACON, et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO. 1:11-CV-00293<br><br><br><br>**OPINION & ORDER** |

This matter is before the Court on Defendant City of Franklin's Motion for Summary Judgment (doc. 69), Defendant Police Officer Jacob Lacon's Motion for Summary Judgment (doc. 70), Plaintiff's Combined Response in Opposition (doc. 76), City of Franklin's Reply (doc. 84), and Officer Lacon's Reply (doc. 85). Also before the Court is Defendants' Joint Motion in Limine (doc. 64), Plaintiff's Response (doc. 76), and Defendants' Reply (doc. 83). The Court held a hearing on these matters on December 12, 2013. For the reasons indicated herein, the Court GRANTS Defendants' motions for summary judgment (docs. 69, 70), and DENIES Defendants' liminal motion as moot.

**I. BACKGROUND**

At issue in this case is whether Defendant Police Officer Jacob Lacon ("Lacon") and his employer the City of Franklin are liable for Lacon's actions in handcuffing and allegedly "taking down" Plaintiff in the process of committing Plaintiff for a mental

health evaluation pursuant to Ohio Rev. Code § 5122.10.[1] The basic facts follow, as taken from the parties' briefing (docs. 69, 70, 76, 84, 85).

Plaintiff Melissa Standifer is a resident of Franklin, Ohio. On May 7, 2010, between 6:00 P.M. and 11:30 P.M., she ingested two Perocets, four beers, and ten to twelve shots of Jaegermeister. Plaintiff weighed about 100 lbs.

At 2:47 A.M., May 8, Plaintiff called 911 complaining her estranged husband and two other men were at her house and would not leave. Officer Lacon responded to Plaintiff's residence. Lacon found the door of Plaintiff's home open, her purse contents scattered on the front porch, and after entering found Plaintiff passed out on her couch. Lacon woke Plaintiff, found no problem, left the residence, and cleared the call.

After Lacon left, Plaintiff telephoned her Mother, Carolyn Hipsher ("Hipsher"). According to Hipsher, Plaintiff yelled at Hipsher, asked her to come over, and when Hipsher inquired what was wrong Plaintiff hung up the phone and would not

---

[1]Section 5122.10 provides that a number of enumerated professionals, including police officers, may take a person into custody where the officer has reason to believe the person is a mentally ill person subject to hospitalization and represents a substantial risk of physical harm to self or others. The statute provides that "[e]very reasonable and appropriate effort shall be made to take persons into custody in the least conspicuous manner possible." The commonly used term in Franklin to describe taking a person into custody under this section is "pink slipping," because according to former Franklin Police Chief Gordon Ellis, the form used in the process at one time was apparently pink (doc. 32).

answer it. Hipsher then went to her daughter Maggie Jo Oney's nearby residence. Hipsher told Oney Plaintiff was not making any sense. Oney had two subsequent phone conversations with Plaintiff, in which Plaintiff stated "I didn't mean to do it," and "there's blood everywhere."

Based on these interactions Plaintiff's Mother called 911 and reported that 1) Plaintiff said "there's blood everywhere, 2) that Plaintiff would not allow police to enter her residence, 3) and that Hipsher believed Plaintiff was on drugs. Dispatch relayed this information to Defendant Officer Lacon, who returned to Plaintiff's home a second time.

Lacon responded a second time, and based on the "blood everywhere" statements and Plaintiff's emotional state, which at this point he described as "very emotional" and "belligerent," Lacon cuffed Plaintiff and called an emergency squad, to "pink slip" her pursuant to O.R.C. §5122.10. During this process, Plaintiff resisted outside of the residence and ended up on the ground, fracturing a vertebrae in her neck. Plaintiff has claimed Lacon "took her down," while Lacon claims she lost her balance after trying to kick him, and fell to the ground. Plaintiff was ultimately found guilty in state court of assaulting Lacon and obstructing official business.

In Plaintiff's Complaint, she brings civil claims under 42 U.S.C. § 1983 for unlawful seizure, excessive force, negligent training/supervision/retention; state law battery; and state law

intentional infliction of emotional distress (doc. 1). At the hearing, Plaintiff's counsel conceded on the issue of Fourth Amendment seizure[2], and focused instead on the theory that the manner in which Lacon pink-slipped Plaintiff amounted to excessive force. In Plaintiff's view, Lacon used excessive force by handcuffing her and "taking her down," and Defendant City of Franklin failed to train and supervise Lacon properly to avoid such alleged excessive force.

Defendants move for summary judgment and also challenge the admissibility of the testimony of Plaintiff's expert on force, Dr. Lyman. Defendants essentially contend Lacon acted reasonably in pink-slipping Plaintiff under the circumstances, that he did not "take down" Plaintiff, that he is entitled to qualified immunity, and that the City has no policy that all those "pink-slipped" should be handcuffed.

**II. STANDARD**

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368

[2]In any event, the Court finds itself collaterally estopped from addressing the question of whether Plaintiff was subject to an unreasonable seizure. The Twelfth Appellate District in Ohio determined she was not. State of Ohio v. Melissa S. Standifer, No. CA2011-07-071, 2012 WL 2700454 at *3 (Ct. App. Ohio, July 9, 2012).

U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of his claims or defenses, "the

designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. DISCUSSION

Immediately before the hearing, the Court observed the police videotape at the scene of Plaintiff’s house the night of May

8, 2010 (Defendants' Exhibit F). Although parts of the tape were unclear, for the Court's purposes the tape confirms that Plaintiff was in an highly emotional state and that she kicked at Lacon. There is no genuine issue of material fact as to whether Lacon took Plaintiff down. He did not. The video shows them both falling after Plaintiff assaulted Lacon. Although Plaintiff proffered evidence that an officer at the scene characterized the fall as a take-down, Defendants countered with evidence that such officer recanted after seeing the videotape. The Court finds Defendant Lacon entitled to summary judgment as to Plaintiff's claim of excessive force with regards to the alleged "take-down." There was no take-down. As such, similarly, the Court finds no basis for a state-law claim for battery or intentional infliction of emotional distress.

The principal remaining questions are whether the City of Franklin, as alleged by Plaintiff, has a policy that results in everyone "pink-slipped" being handcuffed, and whether Lacon's handcuffing of Plaintiff constituted excessive force. The statute providing for involuntary emergency hospitalization, O.R.C. § 5122.10, provides that "every reasonable and appropriate effort shall be made to take the person into custody in the least conspicuous manner possible." Here, the Court finds both Franklin policy and Lacon's actions consistent with Section 5122.10 and constitutional protections against the use of excessive force.

Plaintiff argues in her papers that the City of Franklin

essentially has a policy that any one pink-slipped is handcuffed, and such policy amounts to excessive force, noting that the custody-taking is not a criminal arrest (doc. 76). Plaintiff refers to City of Franklins Field Training Officer ("FTO") Manual, which lists among other things reviewed in training an officer the securing of a subject "with handcuffs." However, Sergeant Wolf, Defendant Lacon's FTO, testified in his deposition that officers "are given discretion and latitude," as in how to effectuate a pink-slip. Wolf himself indicated he does not always handcuff a person, but only does so if the person "puts up a fuss" (docs. 40, 41). Wolf's testimony is consistent with the actual applicable policy, General Order 1.3.14, which shows that handcuffing is on a continuum as a response to the person "pulling away from officer," or "refusing to move" (doc. 69). The Court finds no genuine issue of material fact as to the existence of a policy regarding handcuffing of pink-slipped individuals in the City of Franklin: the policy is reasonable and allows for officer discretion to handcuff or not in the light of the circumstances. As such there is no basis for Plaintiff's claims for negligent training, supervision, or retention. The City of Franklin is not negligent as to its pink-slipping policy with regard to any of these theories.

The final question therefore is whether Lacon's actions in handcuffing Plaintiff amounted to excessive force. The Court answers in the negative. While it may be true that handcuffing

Plaintiff upset her and escalated her emotional state, it is also true that taking into consideration what Lacon knew at the time, his actions fell within the zone of discretion of Franklin policy, and was not an unreasonable exercise of force. Lacon had returned for the second time in the middle of the night to a highly emotional situation, he knew Plaintiff's Mother was concerned and was worried about Plaintiff's safety, and he knew Plaintiff had stated there was blood everywhere. He testified in his deposition that he handcuffed Plaintiff because she chose not to go willingly, and he wanted to avoid a fight. He further testified, "She might see the blood. I don't know," as he explained he thought Plaintiff could be hallucinating. As the Court finds that a reasonable officer under such circumstances at such a scene could have handcuffed Plaintiff so as to protect himself, Plaintiff's Mother, and emergency responders, Defendant Lacon is entitled to qualified immunity. Graham v. Conner, 490 U.S. 386, 396 (1989).

**IV. CONCLUSION**

It is unfortunate that Plaintiff found herself in distress, which concerned her family, and which triggered the situation in which she ultimately was injured. Having reviewed the record, and having heard oral argument on December 12, 2013, the Court cannot conclude that Defendant Lacon acted in any manner other than to attempt to protect and help Plaintiff. In her condition, Plaintiff assaulted Lacon. Sadly, when she fell after her attempted kick, she suffered serious injury.

The Court finds that no reasonable jury could conclude that Plaintiff's right to remain free from excessive force was violated by Lacon or by City of Franklin policy. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The Court further finds no basis for Plaintiff's state law claims, and concludes Lacon's actions are within the scope of O.R.C. § 2744 such that he is entitled to state law immunity. Moreover, as Lacon acted a as a reasonable officer under the circumstances, he is entitled to qualified immunity.

Accordingly, the Court GRANTS Defendant City of Franklin's Motion for Summary Judgment in all respects (doc. 69), similarly GRANTS Defendant Police Officer Jacob Lacon's Motion for Summary Judgment (doc. 70) in all respects, DENIES as MOOT Defendants' Joint Motion in Limine (doc. 64), and DISMISSES this matter from the docket.

SO ORDERED.

Dated: January 14, 2014

s/S. Arthur Spiegel
S. Arthur Spiegel
United States Senior District Judge